IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WARNER MASSEY, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Civ. No. 05-2033 (RCL) |
| ) | |
| DISTRICT OF COLUMBIA, <u>*et al.*</u>, ) | |
| ) | |
| *Defendants*. ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

On October 13, 2005, plaintiffs filed a Motion for a Temporary Restraining Order (TRO) / Preliminary Injunction in D.C. Superior Court. Defendants removed the action to U. S. District Court on October 14, 2005. A hearing on the Motion for a TRO was held before the honorable Judge Lamberth on October 18, 2005. In an order dated the same date, Judge Lamberth denied the TRO motion and ordered Defendants to file any response to Plaintiffs' Motion for a Preliminary Injunction by today.

Defendants respectfully oppose Plaintiffs' Motion for a Preliminary Injunction on the grounds that Plaintiffs cannot meet their burden of satisfying the traditional four-part test for such relief. Moreover, in a contemporaneous motion to dismiss, the Defendants further demonstrate that the Plaintiff's claims are moot in part, that the Plaintiffs have failed to exhaust available administrative remedies, and that the complaint herein should be dismissed.

**STATEMENT OF FACTS**

Plaintiffs' daughter, Tiffany Martin, is a sixteen year old student who, prior to September 8, 2005, resided at the Riverside Hospital and attended the Riverside Academy. Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motions for a Temporary Restraining Order and Preliminary Injunction (hereinafter "TRO Memo"), p. 1. On August 15, 2005, Erica Veazey, a student working at the University of the District of Columbia Law School's Juvenile and Special Education Law Clinic ("UDC Clinic"), wrote to Ms. Ruth Blake at DCPS to "inform" Ms. Blake that the student "will be released from Riverside Hospital on September 7, 2005," that Ms. Veazey was "currently helping Tiffany apply to several schools we feel would be appropriate for her special education needs," and that Ms. Veazey "felt it was important to inform [DCPS] ahead of time that Tiffany will be changing schools this fall." TRO, Att. B.

On September 12, 2005, the student and parents interviewed with the Leary School, a private school in Prince George's County, Maryland. TRO Memo, Att. D. Leary School indicated that Tiffany was accepted and could begin attendance on Leary's receipt of "an Official Referral from DCPS (Notice of Proposed Placement), a settlement agreement, a Court Order, or a Hearing Officer's Determination (indicating that DCPS will pay for all tuition and related services)." Id.

On September 16, 2005, Benjamin Kull, another student at the UDC Clinic, wrote to DCPS to "confirm" that Tiffany had been discharged from Riverside Hospital on September 8 and "awaits placement at a new school." TRO Memo, Att. C. Mr. Kull further "inform[ed DCPS] "that Tiffany has been offered admission to the Leary School,"

2

and "request[ed] that DCPS place Tiffany at the Leary School." Id. Mr. Kull later characterized his September 16 letter as his "initial" request for placement at Leary. TRO Memo, Att. E.

One week later, on September 21, 2005, DCPS held an Individualized Educational Plan ("IEP") meeting for the student. That meeting was attended by, among others, the student, her parents and Mr. Kull. See Exhibit 1 hereto. At the conclusion of that meeting, an educational program was arrived at for Tiffany, and agreed to by the student, her parents and their Advocate. Id.

No placement was made at the IEP meeting, however, because DCPS needed to review the student's records and determine if and where appropriate placements were available. Moreover, 38 D.C. Code §2501(c) provides that special education placements, consistent with the IEP program to be implemented, are to be made in the following order of priority:

> (1) DCPS schools or District of Columbia public charter schools;
> (2) Private or residential District of Columbia facilities; and
> (3) Facilities outside of the District of Columbia.

Thus, DCPS was required to consider the student's neighborhood school first, the next closest neighborhood school, public citywide center programs, and private schools located in the District of Columbia before considering a placement outside the District of Columbia.[1] The student not yet having received a placement, Mr. Kull, in a September

---

[1] 34 C.F.R. §300.550–556 and 20 U.S.C. §1412(a)(5) also require that DCPS place a student with disabilities in the least restrictive educational environment; ensure that the placement decision is made by a group of persons knowledgeable about the child, the meaning of the evaluation data, and the placement options; ensure that a student's placement is made in accordance with §300.550; ensure that the providers are fully informed about their responsibilities; and requires Defendants to monitor activities to be certain all placement decisions are made in accordance with the statutes.

29, 2005, letter to DCPS, renewed his "request" that DCPS place Tiffany at Leary. TRO Memo, Att. E.

On October 11, 2005, the Plaintiffs filed a request (dated October 7) for a due process hearing at DCPS pursuant to IDEA. See Exhibit 2 hereto. In that request, the Plaintiffs challenged DCPS' failure to provide a placement and sought a Hearing Officer directive that DCPS "issue a Notice of Placement for Leary School." See attached Exhibit 2, Due Process Complaint Notice, Letter from Benjamin Kull to DCPS, October 7, 2005, p. 2. The administrative proceeding thus initiated by the Plaintiffs will resolve any dispute concerning the appropriateness of DCPS' current placement of the student (see below).

Also on October 11, Mr. Kull telephoned undersigned counsel Edward Taptich to advise him that the Plaintiffs were about to file a suit and TRO motion in the District of Columbia Superior Court. No such suit or motion, however, was filed that day or the next. In the meantime, undersigned counsel Maria Merkowitz, then assigned to the matter, spoke with Mr. Kull by telephone regarding the status of a potential placement for Ms. Martin. On October 12, Ms Merkowitz informed Mr. Kull that DCPS could offer two different placements, MM Washington Center or the DCALA Senior Center. Mr. Kull responded that he would speak with the parents and let Ms. Merkowitz know their decision. Nothing further was heard from Mr. Kull in that regard, and on October 13, the now-removed suit was filed in Superior Court (Civ. No. 05-8214).

On October 14, DCPS issued a Prior Notice, identifying MM Washington Center as DCPS' placement for the student. See Exhibit 3 hereto. That notice was communicated to the Plaintiffs' Advocate by facsimile on October 17, 2005.

4

The undersigned is advised by DCPS that the student has not appeared for registration or attendance at MM Washington, and that DCPS is unaware where, if anywhere, the student is attending school.

## ARGUMENT

### I. The Applicable Standards for Injunctive Relief

In order to obtain injunctive relief, Plaintiffs must satisfy *each* prong of the following four-part test: (1) that there is a substantial likelihood of success on the merits; (2) that there is an imminent threat of irreparable harm should the relief be denied; (3) that more harm will result to plaintiffs from the denial of the injunction than will result to the defendants from its grant; and (4) that the public interest will not be disserved by the issuance of the requested order. District of Columbia v. Group Ins. Admin., 633 A.2d 2, 21–24 (D.C. 1993); Barry v. Washington Post Co., 529 A.2d 319, 320–321 (D.C. 1987); In re Antioch Univ., 418 A.2d 105, 109 (D.C. 1980); Wieck v. Sterenbuch, 350 A.2d 384, 387 (D.C. 1976); Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 182 U.S. App. D.C. 220, 222, 559 F.2d 841, 843 (1977); Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 104 U.S. App. D.C. 106, 110, 259 F.2d 921, 925 (1958).

### II. The Plaintiffs are Not Entitled to a Preliminary Injunction in This Case.

#### A. The Plaintiffs will not succeed on the merits of their claims.

The complaint herein posits two legal bases for the Plaintiffs' suit: (1) that DCPS has violated 20 U.S.C. §1415(b)(3) in not earlier placing the student, and in "fail[ing] to respond in writing" to Mr. Kull's September 16 and 29 letter "requests" to place the student at Leary School (complaint, paras. 2-10); and (2) that DCPS has violated the American with Disabilities Act ("ADA"), 42 U.S.C. §12132, by "fail[ing] to

appropriately accommodate Tiffany's special education needs and provide Tiffany with FAPE " (complaint, paras. 11-13). The Defendants submit that the Plaintiffs cannot prevail on either ground.

### 1.     <u>There is no basis for concluding the Defendants violated IDEA.</u>

Concerning the first claim, DCPS has now in fact issued a placement for the student and responded in writing to Mr. Kull's "requests." But even if had not, there would be no statutory violation. IDEA Section 1415(b)(3), to which the complaint is directed, provides as follows:

> (b) . . . . The procedures required by this section shall include the following:
> . . . .
>   (3) Written prior notice to the parents of the child, in accordance with subsection (c)(1), whenever the local educational agency--
>     (A) proposes to initiate or change; or
>     (B) refuses to initiate or change, the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child.

That provision includes no timetable that the Plaintiffs assert has been breached, and they have not identified any other prescribed deadline – statutory or regulatory – that DCPS did not meet. Nor can it be concluded at this juncture that the time involved in the communications between Mr. Kull and DCPS was unreasonable.

In the normal course, the matter of a new placement for the beginning of a new school year would be taken early enough in the Summer that necessary evaluations, etc., could be completed, and placement notifications issued, before the commencement of classes in the new school year. Here, the first communication of *any* sort was not directed to DCPS until August 15 – a five-sentence letter "informing" DCPS "that Tiffany will be changing schools this fall, and that the UDC Clinic Advocate was helping the student to "apply to several schools we feel would be appropriate for her special

6

education needs." TRO Memo, Att. B.  However, the Plaintiffs themselves characterize Mr. Kull's September 16 letter as the "initial" request for a placement (and at Leary School).  An IEP meeting – a necessary prerequisite for a new placement – was convened one week later, on September 21.  By October 12, there were two alternative placements made available to the Plaintiffs, and on October 14 – less than 30 days after Mr. Kull's first letter – a Prior Notice of placement was issued. There is no prima facie indication that any statutory or regulatory timetables have not been met, and the facts indeed suggest a reasonably prompt response by DCPS in light of the student's circumstances.[2]

While the TRO Memo also asserts the Plaintiffs' likely prevailing on the merits because "Leary School is an appropriate placement for Tiffany" and "if placed at Leary School, Tiffany would begin receiving FAPE" (TRO Memo, p. 4), those assertions simply posit the Plaintiffs' opinions.  In fact, the matter of placement must be based on an IEP.  The September 21 IEP was agreed to by the Plaintiffs.  And the October 14 placement of the student at MM Washington was determined by DCPS, based on that IEP and applying DCPS' educational expertise.  To be sure, the Plaintiffs have requested an administrative review of that placement.  However, at this juncture, the Plaintiffs' prevailing would depend on Court usurping the administrative process, and independently concluding – in the first instance, before any considered expert administrative judgment – that anything other than a placement at Leary would be

---

[2] The normal process to find a placement for a student, discharged from a hospital, and to determine if there is availability in an appropriate school, is at least 60 days from the date of the request.  Here, the student could have begun to attend school within that time frame had the parents notified DCPS that they accepted one of the placements.  To date the parents have not said anything to DCPS, including why they believe either school is inappropriate.  While Plaintiffs' Advocatel stated at the TRO hearing that he heard that DCALA only had classes for 11th and 12th graders, and that since Ms. Martin is a 10th grader that placement would not be appropriate, this is not true.  DCALA has several sites and covers all high school grades.

7

*in*appropriate. It cannot reasonably be concluded that the Plaintiffs are likely to sustain such an enormous legal and factual burden.

>    2.    **There is no merit to the Plaintiffs' claim of an ADA violation.**

Claim II of the complaint (at para. 13) simply asserts that "DCPS' failure to appropriately accommodate Tiffany's special education needs and provide Tiffany with FAPE violates the ADA." The TRO Memo (at p. 5) similarly asserts that DCPS' asserted failure "to find Tiffany an appropriate school at which her IEP can be implemented" represents a violation of the ADA.

Precedent is uniform, however, that the ADA does not grant any rights beyond those granted by IDEA, and that more than just a denial of FAPE must be shown. As explained in Brantley v. Independent Sch. Dist.No. 625, 936 F.Supp. 649, 656-57 (D.Minn. 1996):

> The ADA and §504 [of the Rehabilitation Act] provide relief from intentional discrimination whereas the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination. In Monahan v. State of Nebraska, 687 F.2d 1164, 1170 (8th Cir. 1982), cert. denied, 460 U.S. 1012, 75 L. Ed. 2d 481, 103 S. Ct. 1252 (1983), the Eighth Circuit held that, in order to make out a violation of § 504 in the educational context, the plaintiff must show more than a mere failure to provide a free appropriate public education as required by the IDEA.
>
>> The reference in the Rehabilitation Act to "discrimination" must require, we think, something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist. Experts often disagree on what the special needs of a handicapped child are, and the educational placement of such children is often necessarily an arguable matter. That a court may, after hearing evidence and argument, come to the conclusion that an incorrect evaluation has been made, and that a different placement must be required under EAHCA, is not necessarily the same thing as a holding that a handicapped child has been discriminated against solely by reason of his or her handicap. An evaluation, in other words, is not discriminatory merely because a court would have evaluated the child differently... We think, rather, that either bad faith or gross misjudgment should be shown before

> a § 504 violation can be made out, at least in the context of education of handicapped children. Id. at 1170-71.

> The requirement that something more than mere violation of the IDEA must be shown to demonstrate a violation of § 504 applies likewise to the ADA in the context of the education of handicapped children. The Eighth Circuit has held that enforcement remedies, procedures and rights under Title II of the ADA are the same as under § 504. Pottgen v. Missouri State High School Activities Association, 40 F.3d 926 (8th Cir. 1994). Accordingly, bad faith or gross misjudgment must also be established in order to make out a violation of the ADA in this context. Hoekstra v. Indep. Sch. Dist. No. 283, 916 F. Supp. 941 (D.Minn. 1996).

The court's discussion in E.W. v. The School Board of Miami-Dade County Florida, 307 F.Supp.2d 1363, 1370-71 (S.D.Fla. 2004) – where the court dismissed the complaint involved – was to the same effect:

> Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1995). Thus, to show a violation of Title II, a plaintiff must show that: 1) he is a qualified individual with a disability; 2) he was excluded from participation in or denied the benefit of a public service; and 3) such exclusion was because of plaintiff's disability. Concerned Parents to Save Dreher Park Ctr. v. City of West Palm Beach, 846 F. Supp. 986, 990 (S.D. Fla. 1994). However, "to prove discrimination in the education context, something more than a mere failure to provide the 'free appropriate education' required by IDEA must be shown." Sellers by Sellers v. School Bd., 141 F.3d 524, 529 (4th Cir. 1998) (quoting Monahan v. Nebraska, 687 F.2d 1164, 1170 (8th Cir. 1982)) (internal quotations omitted). Specifically, a majority of circuits require a showing of bad faith or gross misjudgment in order to show a violation of Title II in the educational context. See id. Thus, a showing of discrimination requires something more than allegations of "an incorrect evaluation, or a substantively faulty individualized education plan." Id. Furthermore, a court's conclusion that "an incorrect evaluation has been made, and that a different placement [is] required under IDEA, is not necessarily the same thing as holding that a handicapped child has been discriminated against" under the ADA. Id. (internal quotations omitted). [Footnotes omitted.]

Accordingly, "[i]n the context of a school case, in order to make out a prima facie case under the ADA . . . , [the plaintiff] must show bad faith or an exercise of gross

9

misjudgment by the [School] District." Thompson v. Board of Special School Dist. No. 1, 144 F.3d 574, 580 (8th Cir. 1998).[3]

Here, however, the Plaintiffs do not even allege (much less detail) bad faith, or an exercise of gross misjudgment, or discrimination against Tiffany, by DCPS. Their claims are specifically limited to a general assertion of a denial of FAPE, no different than would be contemplated under IDEA. Thus, there is no basis for believing that the Plaintiffs are likely to prevail on the merits of this claim.

### B.   The student will not suffer irreparable harm in the absence of a preliminary injunction.

An essential prerequisite to injunctive relief is a sufficient showing by the plaintiffs that they will suffer irreparable harm if injunctive relief is not granted. See, e.g., Davenport v. International Brotherhood of Teamsters, 334 U.S. App. D.C. 228; 166 F.3d 356, 360 (D.C. Cir. 1999). See also Sampson v. Murray, 415 U.S. 61, 88–90 (1974).

> Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur. The movant must provide proof . . . indicating that the harm is certain to occur in the near future.

Wisconsin Gas Co. v. FERC, 244 U.S. App. D.C. 349; 758 F.2d 669, 674 (D.C. Cir. 1985).

"[A]n injunction should not be issued unless the threat of injury is imminent and well-founded, *and* unless the injury itself would be incapable of being redressed after a final hearing on the merits." Wieck, 350 A.2d at 388 (emphasis added). See also

---

[3] See also, e.g., D.F. v. Western School Corp., 921 F.Supp. 559, 574 (S.D.Ill. 1996):
   [C]ourts entering summary judgment on IDEA claims have summarily dismissed accompanying Rehabilitation Act and ADA claims. See, e.g., Hudson v. Bloomfield Hills Pub. Schs., 910 F. Supp. 1291, 1306-07 (ED. Mich. 1995); Tarah P. v. Board of Educ. of Fremont Sch. Dist. 79, No. 94 C 3896, 1995 U.S. Dist. LEXIS 1845, 1995 WL 66283, at *4 (N.D. Ill. Feb. 15, 1995); Scanlon v. San Francisco Unified Sch. Dist., No. C 91-2559 FMS, 1994 U.S. Dist. LEXIS 4817, 1994 WL 860768, at *10-11 (N.D. Cal. Apr. 14, 1994), aff'd mem. 69 F.3d 544 (9th Cir. 1995).

Wisconsin Gas Co., 758 F.2d at 674. The movant has the burden to come forward with admissible evidence that he will suffer irreparable harm unless injunctive relief is granted. Davenport, 166 F.3d at 360.

Here, there has been no showing of irreparable harm pending a resolution of the merits, particularly in light of recent events. The TRO Memo (at p. 5) asserts injury by virtue of DCPS *not placing the student*:

> Though DCPS is obligated to find Tiffany an appropriate school at which her IEP can be implemented, DCPS has failed to do so. It is DCPS's failure to so accommodate Tiffany's disabilities that is the direct cause of Tiffany's exclusion from . . . a free appropriate public education.

The student has now received a placement, however, thus mooting the basis for the TRO motion's claim of injury. Any injury from not attending school is now attributable to the Plaintiffs' voluntary choice not to avail themselves of DCPS' placement, not to any DCPS failure to provide a placement. To the extent the Plaintiffs may now contend that injury will occur from the student's *not having been placed at Leary* during the pendency of these proceedings, there is no basis whatever for such a conclusion. Nor has there been any showing sufficient to support any assertion that MM Washington, DCPS' placement, is not appropriate, based on the September 21 IEP to which the Plaintiffs and their Advocate agreed.

In fact, the student was offered a choice of two placements and could have begun attending school on or about October 13, 2005. Additionally, DCPS has agreed to provide compensatory education to the student from the date school began, August 29, 2005, to the date it issued a Prior Notice of placement on October 17, 2005. The fact that the student is not currently attending school is because the parents believe that only the Leary School is an appropriate placement.

11

To meet the requirements of the IDEA, a school district must provide each disabled student with a free appropriate public education ("FAPE") tailored to his or her individual needs. *U.S.C. Sec.* 1400(d)(1)(A). A free appropriate public education is one "specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 188-89 (1982). The school district, however, is not required to provide the best possible education. *See Heather S. v. Wisconsin,* 125 F.3d 1045, 1057 (7th Cir. 1997).

C. **The balance of harms favors the Defendants**.

At this juncture, there is no harm to the Plaintiffs attributable to the Defendants. A placement is, and has been, available to the student. And it cannot be said that the Plaintiffs are harmed, not because the student cannot go to school, but because the student cannot go to the school they would prefer.

By contrast, the District of Columbia is obligated to comply with the Anti-Deficiency Act, which bars expenditures in excess of or inconsistent with appropriations. *See* 31 U.S.C. 1341(a)(1)(A) ("an officer or employee of … the District may not (A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation"); *see also* D.C. Code Sec. 1-206.03(e) (2001) (applying the federal Anti-Deficiency Act to the budgeting and spending processes of the District government).

In order to accommodate an unanticipated, additional expense such as payment of tuition at the Leary School, should the Court so order, District agencies are forced to

redirect funds and cut needed expenses. DCPS' budget is already stretched thin, and any additional expense results in a decrease of funds available for textbooks, teachers, improvement of facilities, technical equipment, and other essentials. Such cutbacks and shifting of funds are necessary to avoid running afoul of the Anti-Deficiency Act. Thus, the Defendants would incur substantially more harm should Plaintiffs' motion be granted than the Plaintiffs would suffer if it is denied.

### D. Granting the preliminary injunction would not be in the public interest

In general terms, grant of the relief requested here would represent a major disruption of a carefully crafted legislative scheme for evaluating and placing special education students. While IDEA provides processes for students' placement – the timetables for which the Plaintiffs have nowhere shown noncompliance – the Plaintiffs would have the Court arrogate to itself an educational placement judgment in the first instance, even while the same issue is being pursued administratively, but before the conclusion of those administrative processes. Such a course can only impair the orderly conduct of the adjudication procedures prescribed by Congress.

Moreover, in light of the significant budgetary impact of paying private school tuition, the District's ability to meet the needs of other children could be compromised should the Court grant plaintiffs' preliminary injunction. (*See* In re H.J.B., 359 A.2d 285, 295 (D.C. 1976)).

For the almost 9,000 District children who receive special education in public schools, DCPS is only able to ensure funding of a little less than $10,000 per student, per year. Clearly, a disproportionately large segment of the budget goes to private tuition.

13

The Court should not order that Tiffany Martin be sent to the Leary School, because such an action could have a tremendous negative impact on the public interest.  Further, should plaintiffs ultimately prove to be unsuccessful in their complaint, the District would be unable to recoup the funds it had spent unnecessarily on this student.

## **CONCLUSION**

For the Court to grant extraordinary injunctive relief, Plaintiff must clearly show (1) that there is a substantial likelihood of success on the merits of the case, (2) that irreparable harm would occur to Plaintiff absent such relief, (3) that an injunction would not substantially harm the rights of the District, and (4) that an injunction is in the public interest. *Washington Metro. Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 843 (D.C. Cir. 1971).

Plaintiffs' Motion fails to satisfy any of the four factors.  First, Plaintiffs do not have a substantial likelihood of success on the merits; a placement has been offered, and the general assertion of a violation of the ADA cannot be sustained.  Second, Plaintiff cannot show irreparable harm because DCPS has made a free appropriate public education available to the student at M.M. Washington and continues to do so.

Third, a granting of the preliminary injunction would substantially harm the District because it would encourage others to disregard the administrative procedures in place and to forum shop.  Such a grant would also undermine DCPS' ability to exercise its discretion or apply its expertise.  Fourth, the injunction is not in the public interest because it is a waste of judicial resources, as there are due process procedures in place for IDEA claims.  In sum, Plaintiffs' motion does not meet *any* of the required elements and should be dismissed.

Accordingly, the Plaintiffs' motion for preliminary injunction should be denied.

>Respectfully submitted,
>
>ROBERT J. SPAGNOLETTI
>Attorney General for the District of Columbia
>
>GEORGE C. VALENTINE
>Deputy Attorney General
>
>/s/ Edward P. Taptich
>EDWARD P. TAPTICH [012914]
>Chief, Equity, Section 2
>
>/s/ Maria L. Merkowitz
>MARIA L. MERKOWITZ [312967]
>Senior Litigation Counsel
>441 4th Street, N.W.
>Sixth Floor North
>Washington, DC 20001
>(202) 442-9842
>FAX  -  (202) 727-3625

October 25, 2005