IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WARNER MASSEY, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Civ. No. 05-2033 (RCL) |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

The Defendants, by counsel, move the Court to dismiss the complaint herein pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). If, in light of the documents that accompany this motion, the Court deems it necessary to treat this motion as one for summary judgment under Fed. R. Civ. Pro. 12(b)(6) and 56, Defendants request a grant of summary judgment.

The reasons for this motion are set forth in the accompanying supporting memorandum. A proposed order is also submitted herewith.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [#012914]
Chief, Equity Section 2

2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
FAX - (202) 727-3625

October 25, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WARNER MASSEY, *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Civ. No. 05-2033 (RCL) |
| DISTRICT OF COLUMBIA, <u>*et al.*</u>, | ) ) ) | |
| *Defendants*. | ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

The captioned complaint was initially filed October 13, 2005, in the District of Columbia Superior Court; on October 14, 2005, the case was removed to this Court. The complaint asserts two causes of action: (1) that the District of Columbia Public Schools ("DCPS"), in violation of Section 1415(b)(3) of the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. §1415(b)(3), failed to respond in writing to the Plaintiffs' request that DCPS issue an educational placement for their daughter Tiffany; and (2) that the Defendants violated the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§12131, 12132, in failing to provide Tiffany with a free and appropriate public education ("FAPE").

The Defendants submit that the complaint must be dismissed. As shown below, the first claim is moot, the second fails to state a cause of action upon which a grant of relief may properly be based, and as to the underlying challenge herein – to DCPS' failure to place the student at the private school of the Plaintiffs' choosing – the Plaintiffs have failed to exhaust available (and currently employed) administrative remedies.

## INTRODUCTION

Plaintiffs' daughter, Tiffany Martin, is a sixteen-year-old student who, prior to September 8, 2005, resided at the Riverside Hospital and attended the Riverside Academy. Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motions for a Temporary Restraining Order and Preliminary Injunction (hereinafter "TRO Memo"), p. 1. On August 15, 2005, Erica Veazey, a student working at the University of the District of Columbia Law School's Juvenile and Special Education Law Clinic ("UDC Clinic"), wrote to Ms. Ruth Blake at DCPS to "inform" Ms. Blake that the student "will be released from Riverside Hospital on September 7, 2005," that Ms. Veazey was "currently helping Tiffany apply to several schools we feel would be appropriate for her special education needs," and that Ms. Veazey "felt it was important to inform [DCPS] ahead of time that Tiffany will be changing schools this fall." TRO Memo, Att. B.

On September 12, 2005, the student and parents interviewed with the Leary School, a private school in Prince George's County, Maryland. TRO Memo, Att. D. Leary School indicated that Tiffany was accepted and could begin attendance on Leary's receipt of "an Official Referral from DCPS (Notice of Proposed Placement), a settlement agreement, a Court Order, or a Hearing Officer's Determination (indicating that DCPS will pay for all tuition and related services)." Id.

On September 16, 2005, Benjamin Kull, another student at the UDC Clinic, wrote to DCPS to "confirm" that Tiffany had been discharged from Riverside Hospital on September 8 and "awaits placement at a new school." TRO Memo, Att. C. Mr. Kull further "inform[ed DCPS] "that Tiffany has been offered admission to the Leary School,"

2

and "request[ed] that DCPS place Tiffany at the Leary School." Id. Mr. Kull later characterized his September 16 letter as his "initial" request for placement at Leary. TRO Memo, Att. E.

One week later, on September 21, 2005, DCPS held an Individualized Educational Plan ("IEP") meeting for the student.[1] That meeting was attended by, among others, the student, her parents and Mr. Kull. See Exhibit 1 hereto. At the conclusion of that meeting, an educational program was arrived at for Tiffany, and agreed to by the student, her parents and their Advocate. Id.

No placement was made at the IEP meeting, however, because DCPS needed to review the student's records and determine if and where appropriate placements were available. Moreover, 38 D.C. Code §2501(c) provides that special education placements,

---

[1] Under IDEA, disabled students are entitled to a FAPE. 20 U.S.C §1412(a)(1). An IEP team, consisting of the disabled student's parents, teachers, and other educational specialists, meet and confer in a collaborative process to determine how best to accommodate the needs of the student to provide a FAPE. 20 U.S.C. §1414(d)(1)(B). The IEP is the written statement from the meeting that includes, among other things, goals and instructional objectives, services to be provided, projections regarding the dates when such services will be offered, and criteria for evaluating whether instructional objectives are being met. 20 U.S.C. §1414(d)(1)(A); see also 20 USCS § 1401(11). In other words, the IEP is the legal instrument that lays out what services the public education agency must deliver to the student in order to provide that student with a FAPE. See id. The IEP team also must make decisions regarding the student's educational placement. See 20 U.S.C. §§ 1412(a)(5)(A) and 1414(d) and (f).
  Additionally, the IEP team may determine that a student requires non-educational, supportive services in order to benefit from special education. See 34 C.F.R. § 300.24(a). These services are known as "related services."
> The term "related services" means transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) *as may be required to assist a child with a disability to benefit from special education*, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(a)(22) (emphasis added). The Supreme Court clarified that "related services" are, "as a general matter, services that enable a disabled child to remain in school during the day provide the student with 'the meaningful access to education that Congress envisioned.'" See Cedar Rapids Community School District v. Garret F., 526 U.S. 66, 77, quoting Irving Independent School District v. Tatro, 468 U.S. 883, 891 (1984).

consistent with the IEP program to be implemented, are to be made in the following order of priority:

> (1) DCPS schools or District of Columbia public charter schools;
> (2) Private or residential District of Columbia facilities; and
> (3) Facilities outside of the District of Columbia.

Thus, DCPS was required to consider the student's neighborhood school first, the next closest neighborhood school, public citywide center programs, and private schools located in the District of Columbia before considering a placement outside the District of Columbia.[2] The student not yet having received a placement, Mr. Kull, in a September 29, 2005, letter to DCPS, renewed his "request" that DCPS place Tiffany at Leary. TRO Memo, Att. E.

On October 11, 2005, the Plaintiffs filed a request (dated October 7) for a due process hearing at DCPS pursuant to IDEA. See Exhibit 2 hereto. In that request, the Plaintiffs challenged DCPS' failure to provide a placement and sought a Hearing Officer directive that DCPS "issue a Notice of Placement for Leary School." See attached Exhibit 2, Due Process Complaint Notice, Letter from Benjamin Kull to DCPS, October 7,2005, p. 2. The administrative proceeding thus initiated by the Plaintiffs will resolve any dispute concerning the appropriateness of DCPS' current placement of the student (see below).

Also on October 11, Mr. Kull telephoned undersigned counsel Edward Taptich to advise him that the Plaintiffs were about to file a suit and TRO motion in the District of

---

[2] 34 C.F.R. §300.550–556 and 20 U.S.C. §1412(a)(5) also require that DCPS place a student with disabilities in the least restrictive educational environment; ensure that the placement decision is made by a group of persons knowledgeable about the child, the meaning of the evaluation data, and the placement options; ensure that a student's placement is made in accordance with §300.550; ensure that the providers are fully informed about their responsibilities; and requires Defendants to monitor activities to be certain all placement decisions are made in accordance with the statutes.

4

Columbia Superior Court. No such suit or motion, however, was filed that day or the next. In the meantime, undersigned counsel Maria Merkowitz, then assigned to the matter, spoke with Mr. Kull by telephone regarding the status of a potential placement for Ms. Martin. On October 12, Ms Merkowitz informed Mr. Kull that DCPS could offer two different placements, MM Washington Center or the DCALA Senior Center. Mr. Kull responded that he would speak with the parents and let Ms. Merkowitz know their decision. Nothing further was heard from Mr. Kull in that regard, and on October 13, the now-removed suit was filed in Superior Court (Civ. No. 05-8214).

On October 14, DCPS issued a Prior Notice, identifying MM Washington Center as DCPS' placement for the student. See Exhibit 3 hereto. That notice was communicated to the Plaintiffs' Advocate by facsimile on October 17, 2005.

The undersigned is advised by DCPS that the student has not appeared for registration or attendance at MM Washington, and that DCPS is unaware where, if anywhere, the student is attending school.

## ARGUMENT

I. **The Applicable Legal Standards.**

   A. **Lack of Subject Matter Jurisdiction, Pursuant to Federal Rules of Civil Procedure Rule 12(b)(1).**

When plaintiffs fail to exhaust their administrative remedies under the IDEA, the court will dismiss their claim for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. Pro. 12(b)(1). See Moss v. Smith, 794 F. Supp. 11 (D.D.C. 1992). The Moss Court found that the plaintiff was required to exhaust her administrative remedies under the IDEA prior to filing suit because the administrative remedies available were neither futile nor inadequate. See id.; see also Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C.

5

2002) ("[f]ailure to exhaust administrative remedies deprives a district court of subject matter jurisdiction").

In considering a motion to dismiss for lack of subject matter jurisdiction, the court can consider facts outside of the motion or complaint without changing the motion to a summary judgment motion. See Capitol Leasing Co. v. FDIC, 999 F.2d 188 (7th Cir. 1993); Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002); Pelham v. United States, 661 F. Supp. 1063 (D. N.J. 1987).

### B. Failure to State a Claim Upon Which Relief Can be Granted, Federal Rules of Civil Procedure Rule 12(b)(6).

The court should only grant a motion to dismiss when it appears beyond doubt that under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief. Haynesworth v. Miller, 261 U.S. App. D.C. 66, 820 F.2d 1245, 1254 (D.C. Cir. 1987); Conley v. Gibson, 355 U.S. 41, 45 (1957). The movant is not entitled to judgment if there are allegations in the complaint which, if proved, would provide a basis for recovery. Haynesworth, 820 F.2d at 1254. Although plaintiff enjoys the benefit of all inferences that plausibly can be drawn from well-pleaded allegations of the complaint, bare conclusions of law or sweeping and unwarranted averments of fact will not be deemed admitted for purposes of a motion under Rule 12(b)(6). Id.

Further, the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Kowal v. MCI Communications Corp., 305 U.S. App. D.C. 60, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Nor must the court accept legal conclusions cast in the form of factual allegations" Id.

II. **The Paintiffs' Complaint Should be Dismissed.**

　A. **The Plaintiffs' Claim I is moot.**

That the Court's jurisdiction is dependent on the existence of a live case or controversy is axiomatic.

> Article III of the Constitution limits federal "judicial Power," that is, federal-court jurisdiction, to "Cases" and "Controversies." This case-or-controversy limitation serves "two complementary" purposes. Flast v. Cohen, 392 U.S. 83, 95 (1968). It limits the business of federal courts to "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process," and it defines the "role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government." Ibid. Likewise, mootness has two aspects: "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).

United States Parole Commission v. Geraghty, 445 U.S. 388, 395-396 (1980). Further, in United States of America, v. Weston, 194 F.3d 145, 147-148 (D.C. Cir. 1999), the District of Columbia Circuit Court stated that:

> "[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.' " Preiser v. Newkirk, 422 U.S. 395, 401, 45 L. Ed. 2d 272, 95 S. Ct. 2330 (1975) (citation omitted). "For that reason, if [] events occur while a case is pending on appeal that make[] it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed [as moot]." Church of Scientology of California v. United States, 506 U.S. 9, 12, 121 L. Ed. 2d 313, 113 S. Ct. 447 (1992). [Emphasis added.]

Claim I of the complaint herein (at para. 10) asserts that DCPS' "failure to respond in writing [to Mr. Kull's "requests" to place the student at Leary] violates 20

7

U.S.C. §1415(b)(3)."[3]  Assuming that Mr. Kull's letters appropriately activated DCPS obligations under the statute, and even ignoring Ms. Merkowitz' October 12 conveying to Mr. Kull two available placements for the student, DCPS did in fact respond to Mr. Kull's "requests" in an October 14, 2005, written placement notice. See attached Exhibit 3.[4]

While the Plaintiffs may not like the placement the October 14 Prior Notice reflects, that issue is distinct from the asserted absence of a written DCPS response.  And there are administrative procedures available to challenge the substance of the Prior Notice – due process hearing procedures under IDEA, of which the Plaintiffs have indeed availed themselves.  However, it is no longer true that DCPS "failed to respond in writing" to Mr. Kull's "requests."  And at least that much of the complaint is moot, and must be dismissed.  See also, e.g., Board of School Commissioners of the City of Indianapolis v. Jacobs, 420 U.S. 128, 129 (1975).[5]

---

[3] Section 1415(b)(3) provides:
> (b) Types of procedures. The procedures required by this section shall include the following:
> . . . .
> (3) Written prior notice to the parents of the child, in accordance with subsection (c)(1), whenever the local educational agency--
> (A) proposes to initiate or change; or
> (B) refuses to initiate or change, the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child.

[4] Indeed, to the extent any placement necessarily requires a prior IEP on which it must be based, it is equally undeniable that an IEP meeting was held on September 21. See attached Exhibit 1.  That meeting was attended by the Plaintiffs and they agreed with the program conclusions reached for the student.  The IEP itself could well be considered another writing responsive to Mr. Kull's "request," a writing of which the plaintiffs were aware on September 21.

[5] The doctrine of "capable of repetition yet evading review" is an exception to mootness for cases where the party can demonstrate that "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the s ame action again."  United States v. Weston, 194 F.3d 145, 148 (D.C. Cir. 1999).  Neither circumstance is present here.  The lack of a placement – the basis for this suit – has been rectified, and the potential for the absence of a future placement is thus obviated.   Moreover, even if the Plaintiffs are unsuccessful in persuading an administrative Hearing Officer that Leary is the appropriate placement for the student, they have available an "appeal" to this Court under IDEA to review such a determination; thus the issue would not escape review.

8

**B.     The complaint fails to state a cause of action under the ADA.**

Claim II of the complaint (at para. 13) simply asserts that "DCPS' failure to appropriately accommodate Tiffany's special education needs and provide Tiffany with FAPE violates the ADA." The TRO Memo (at p. 5) similarly asserts that DCPS' asserted failure "to find Tiffany an appropriate school at which her IEP can be implemented" represents a violation of the ADA.

Precedent is uniform, however, that the ADA does not grant any rights beyond those granted by IDEA, and that more than just a denial of FAPE must be shown. As explained in <u>Brantley v. Independent Sch. Dist.No. 625</u>, 936 F.Supp. 649, 656-57 (D.Minn. 1996):

> The ADA and §504 [of the Rehabilitation Act] provide relief from intentional discrimination whereas the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination. In <u>Monahan v. State of Nebraska</u>, 687 F.2d 1164, 1170 (8th Cir. 1982), <u>cert. denied</u>, 460 U.S. 1012, 75 L. Ed. 2d 481, 103 S. Ct. 1252 (1983), the Eighth Circuit held that, in order to make out a violation of § 504 in the educational context, the plaintiff must show more than a mere failure to provide a free appropriate public education as required by the IDEA.
>
>> The reference in the Rehabilitation Act to "discrimination" must require, we think, something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist. Experts often disagree on what the special needs of a handicapped child are, and the educational placement of such children is often necessarily an arguable matter. That a court may, after hearing evidence and argument, come to the conclusion that an incorrect evaluation has been made, and that a different placement must be required under EAHCA, is not necessarily the same thing as a holding that a handicapped child has been discriminated against solely by reason of his or her handicap. An evaluation, in other words, is not discriminatory merely because a court would have evaluated the child differently... We think, rather, that either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children. <u>Id.</u> at 1170-71.

9

> The requirement that something more than mere violation of the IDEA must be shown to demonstrate a violation of § 504 applies likewise to the ADA in the context of the education of handicapped children. The Eighth Circuit has held that enforcement remedies, procedures and rights under Title II of the ADA are the same as under § 504. Pottgen v. Missouri State High School Activities Association, 40 F.3d 926 (8th Cir. 1994). Accordingly, bad faith or gross misjudgment must also be established in order to make out a violation of the ADA in this context. Hoekstra v. Indep. Sch. Dist. No. 283, 916 F. Supp. 941 (D.Minn. 1996).

The court's discussion in E.W. v. The School Board of Miami-Dade County Florida, 307 F.Supp.2d 1363, 1370-71 (S.D.Fla. 2004) – where the court dismissed the complaint involved – was to the same effect:

> Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1995). Thus, to show a violation of Title II, a plaintiff must show that: 1) he is a qualified individual with a disability; 2) he was excluded from participation in or denied the benefit of a public service; and 3) such exclusion was because of plaintiff's disability. Concerned Parents to Save Dreher Park Ctr. v. City of West Palm Beach, 846 F. Supp. 986, 990 (S.D. Fla. 1994). However, "to prove discrimination in the education context, something more than a mere failure to provide the 'free appropriate education' required by IDEA must be shown." Sellers by Sellers v. School Bd., 141 F.3d 524, 529 (4th Cir. 1998) (quoting Monahan v. Nebraska, 687 F.2d 1164, 1170 (8th Cir. 1982)) (internal quotations omitted). Specifically, a majority of circuits require a showing of bad faith or gross misjudgment in order to show a violation of Title II in the educational context. See id. Thus, a showing of discrimination requires something more than allegations of "an incorrect evaluation, or a substantively faulty individualized education plan." Id. Furthermore, a court's conclusion that "an incorrect evaluation has been made, and that a different placement [is] required under IDEA, is not necessarily the same thing as holding that a handicapped child has been discriminated against" under the ADA. Id. (internal quotations omitted). [Footnotes omitted.]

Accordingly, "[i]n the context of a school case, in order to make out a prima facie case under the ADA . . . , [the plaintiff] must show bad faith or an exercise of gross

10

misjudgment by the [School] District." Thompson v. Board of Special School Dist. No. 1, 144 F.3d 574, 580 (8th Cir. 1998).[6]

Here, however, the Plaintiffs do not even allege (much less detail) bad faith, or an exercise of gross misjudgment, or discrimination against Tiffany, by DCPS. Their claims are specifically limited to a general assertion of a denial of FAPE, no different than would be contemplated under IDEA. Thus, on its face, the complaint fails to state a cause of action under the ADA, and the second claim must be dismissed for that reason.

### C. The Plaintiffs have not exhausted their administrative remedies.

The doctrine of exhaustion of administrative remedies provides that:

> "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51, 82 L. Ed. 638, 58 S. Ct. 459 (1938). The exhaustion requirement may arise under a statute specifically, or be implied from an administrative scheme providing avenues of agency relief. *See Linfors v. United States*, 673 F.2d 332 (11th Cir. 1982).

*Nichols v. Board of Trustees*, 725 F. Supp. 568, 571 (D.D.C.1989).[7]

---

[6] See also, e.g., D.F v. Western School Corp., 921 F.Supp. 559, 574 (S.D.Ill. 1996):
 [C]ourts entering summary judgment on IDEA claims have summarily dismissed accompanying Rehabilitation Act and ADA claims. See, e.g., Hudson v. Bloomfield Hills Pub. Schs., 910 F. Supp. 1291, 1306-07 (ED. Mich. 1995); Tarah P. v. Board of Educ. of Fremont Sch. Dist. 79, No. 94 C 3896, 1995 U.S. Dist. LEXIS 1845, 1995 WL 66283, at *4 (N.D. Ill. Feb. 15, 1995); Scanlon v. San Francisco Unified Sch. Dist., No. C 91-2559 FMS, 1994 U.S. Dist. LEXIS 4817, 1994 WL 860768, at *10-11 (N.D. Cal. Apr. 14, 1994), aff'd mem. 69 F.3d 544 (9th Cir. 1995).

[7] The *Nichols* Court goes on to explain that:
 In *McKart v. United States*, 395 U.S. 185, 23 L. Ed. 2d 194, 89 S. Ct. 1657 (1969), the Supreme Court articulated the policies behind the requirement of exhaustion: (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." *Id*. at 193-95.
 725 F. Supp. at 571.

11

In this action, given that DCPS has now issued a placement for the student, the Plaintiffs are only arguably left to challenge DCPS' failure to issue a placement for the student *at Leary School* – the private school whose expenses Tiffany's parents would like DCPS to pay.  Two days before filing this action, however, the Plaintiffs initiated an administrative process under IDEA directed to precisely the same issue as that raised in this action.  And that process has not yet been concluded.

The IDEA and its corresponding regulations specifically provide due process procedures to safeguard students' rights under the statute.  20 U.S.C. § 1415; 34 C.F.R. §§ 300.507-512; 5 D.C.M.R. § 3029-3031.  Students or their guardians can bring their IDEA complaints in the first instance before impartial hearing officers.  Id.  A hearing officer's decision is the final administrative decision, and an aggrieved party may then bring a civil action in any court of competent jurisdiction.  20 U.S.C. 1415(i)(2); 34 C.F.R. § 300.512; 5 D.C.M.R. 3031.5.  Clearly, Congress intended for individuals to exhaust their administrative remedies under the IDEA before filing suit in federal court.  See Moss v. Smith, 794 F. Supp. 11, 13 (D.D.C. 1992) (citing Smith v. Robinson, 468 U.S. 992 (1984)).

Because Plaintiffs seek relief from this Court without first obtaining a final administrative action from DCPS under the IDEA, this Court should dismiss their claim for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. Pro. 12(b)(1).  Moss v. Smith, supra.  The Moss Court found that the plaintiff was required to exhaust administrative remedies under the IDEA prior to filing suit because the administrative remedies available were neither futile nor inadequate.  Id.  Plaintiffs have made no such showing that in the instant case the administrative remedies were not available to them.

12

In fact, Plaintiffs having filed their due process hearing request on October 11 not only confirms the availability of appropriate administrative adjudicative processes, but demonstrates the Plaintiffs' belief that those procedures are neither inadequate not futile.

## CONCLUSION

In light of the foregoing, the Defendants respectfully submit that dismissal of the complaint is required. Claim I is moot. And Claim II fails to state a cause of action.

As to the general propriety of DCPS' current placement of the student at MM Washington, the administrative processes applicable to the Plaintiffs' objections to that determination have been initiated by the Plaintiffs, and have not yet been concluded. And to that extent, applicable administrative procedures have not been exhausted.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [#012914]
Chief, Equity Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
FAX - (202) 727-3625

October 25, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WARNER MASSEY, *et al.*, | ) |
| *Plaintiffs*, | ) |
| v. | ) Civ. No. 05-2033 (RCL) |
| DISTRICT OF COLUMBIA, <u>*et al.*</u>, | ) |
| *Defendants.* | ) |

## **ORDER**

Upon consideration of the Defendants' October 25, 2005, motion to dismiss the complaint, the Plaintiffs' response and the record in this proceeding, it is

ORDERED, That the Defendants' motion is granted; and it is

FURTHER ORDERED, that the complaint herein is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

14