UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WARNER MASSEY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 05-2033 (RCL) |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter comes before this Court on Plaintiffs' Motion for Preliminary Injunction. Upon being served with a complaint from the Superior Court for the District of Columbia, defendants removed the case to this Court. The parties appeared before this Court for oral argument on two occasions: the first, on October 18, 2005 ("October 18 Hearing"), at the conclusion of which this Court denied plaintiffs' motion for a temporary restraining order; and the second, a hearing on the preliminary injunction, on October 27, 2005 ("October 27 Hearing"). In the interim, defendants filed a Response [7] to Plaintiffs' Motion for Preliminary Injunction on October 26, 2005.

At the October 27 Hearing, this Court ordered defendants to supplement their Response with evidence on two key questions of fact, which defendants did in their Addendum [8] filed on October 28, 2005. Upon plaintiffs' request, this Court granted plaintiffs leave to file any addenda supporting their motion, which they did in a Reply [9] filed November 1, 2005. After a thorough review of the parties' filings, the applicable law and the entire record herein, this Court concludes that plaintiffs' motion for a preliminary injunction shall be GRANTED.

# I. BACKGROUND

This case centers on the education of a troubled teenager. Tiffany, a resident of the District of Columbia, has been diagnosed with learning disabilities and emotional disturbances. (Pls.' Mem. P. & A. 1.) Under federal law, District of Columbia Public Schools ("DCPS") must provide children with disabilities the same services it provides to other children: a free appropriate public education ("FAPE"). Individuals with Disabilities Education Act, 20 U.S.C.A. § 1400 *et seq.* (1970) ("IDEA"), *amended by* Pub. L. No. 108-446, 118 Stat. 2647 (2004). The IDEA requires school districts to follow specified procedures to determine a child's needs and then place that child in an appropriate public or private facility at no charge to the student's family. Until recently, DCPS appeared to be fulfilling its legal obligation to Tiffany. Over approximately the past two months, however, Tiffany's parents claim that DCPS has failed to appropriately place her, leaving her without any school to attend.

For approximately the past year, Tiffany resided in Riverside Hospital, a residential treatment facility. (Pls.' Mem. P. & A. 1.) As a resident of the hospital, she attended the adjacent school, Riverside Academy, which DCPS had authorized as a placement for her. (*Id.* at 2.) On September 8, 2005, Tiffany was discharged from the hospital. (*Id.*) Since Riverside Academy is only available for children who are current residents of the hospital, she was no longer eligible to attend. (*Id.*) Tiffany therefore was in need of a new school placement.

Tiffany's parents, Warner and Kathy Massey, notified DCPS of Tiffany's impending release three weeks in advance. (*Id.*; *id.* Attach. B.) Upon her release, the Masseys had not received any indication that DCPS had taken any action on her case. The Masseys had already begun their own research into appropriate school placements for Tiffany, and four days after

2

Tiffany's release, she and her parents interviewed with one promising possibility: Leary School, a private institution in Maryland for children with disabilities. Tiffany was accepted, but Leary School notified the Masseys that it would not enroll her without DCPS authorization. (Pls.' Mem. P. & A. Attach D.) Accordingly, on September 16, 2005, Mr. and Mrs. Massey requested that DCPS place Tiffany at Leary School. (Pls.' Mem. P. & A. 2; *id.* Attach. C.)

Five days later, on September 21, 2005, the Masseys participated in an Individual Educational Plan ("IEP") meeting convened by DCPS to begin the process of determining an appropriate placement. (Pls.' Mem. P. & A. 2.) DCPS advised the Masseys that it could not authorize Leary School, or propose any placement for Tiffany, until it received a signed medical release. (*Id.*) Mrs. Massey signed the release at the meeting. (*Id.* at 3.) DCPS requested a copy of the Leary School admission letter, and indicated that DCPS would provide a proposed placement no later than September 26, 2005. (*Id.*)

September 26 came and went with no word from DCPS. (*Id.*) The Masseys, through their attorneys, forwarded the Leary School acceptance letter and renewed their request for a placement there on September 29, 2005. (*Id.*; *id.* Attach E.) Nearly two weeks later, on October 11, 2005, the Masseys made a request for a due process hearing, a remedy provided under the administrative scheme of the IDEA. The next day, October 12, 2005, DCPS spoke to the Masseys' counsel and offered two possible placements, MM Washington Center and the DCALA Center.[1] (Defs.' Resp. 4.) The Masseys did not respond to DCPS' suggestions, but rather filed the instant complaint in District of Columbia Superior Court on October 13, 2005, requesting

---

[1]Apparently, DCPS counsel initially misstated the name of the second possible placement, referring to it as DCALA Senior Center, another facility which would not be appropriate for Tiffany. DCPS later clarified to plaintiffs' counsel that the correct name of the proposed placement is DCALA Center.

that DCPS be required by temporary restraining order and preliminary injunction to place Tiffany at Leary School. (*Id.*)  The basis of the complaint is that DCPS' failure to observe statutory deadlines and to provide a timely appropriate placement for Tiffany was in violation of the IDEA and the Americans with Disabilities Act, 42 U.S.C.A. § 12132 *et seq*. (1980) ("ADA").

DCPS then issued an official placement for Tiffany on October 14, 2005, placing her at MM Washington Center ("October 14 Prior Notice"). (Defs.' Resp. 4; *id.* Ex. 3.)  This was communicated to the Masseys via facsimile to their attorney three days later, on October 17. (Defs.' Resp. 4.)  The Masseys did not respond to the placement, but argued to this Court that neither placement was appropriate for Tiffany. (October 18 Hearing.)  Based on information obtained from the schools' Internet sites, they noted that DCALA is inappropriate for Tiffany because it does not offer her current grade level. (*Id.*)  MM Washington is not a match for Tiffany for two reasons: (1) its student to faculty ratio is too high; and (2) it is described as a school for children with emotional disturbances, while Tiffany needs attention to learning disabilities as well. (*Id.*)  After DCPS placed Tiffany at MM Washington Center, defendants further supplemented their argument that it is inappropriate after visiting the school, along with Tiffany's counselor and counsel (Massey 10/30/05 Aff.; Walters Aff.), and with an affidavit of Tiffany's Case Manager, (Mendelsohn Aff.), who also visited the school.[2]  On the basis of their findings, the Masseys continued to insist that Tiffany be placed at Leary, or at another school that satisfies her needs as contained in the IEP. (*Id.*)  DCPS contends that either school would

---

[2]Ms. Mendelsohn visited the school as recently as last week, and found rampant chaos and negativity (Mendelsohn Aff. ¶ 13).  Such an environment is clearly ill-suited to Tiffany's needs, as identified in her IEP, for a "structured setting with behavioral supports" and "a behavior management system that includes positive incentives." (Pls.' Reply Attach F. at 2.)

4

provide Tiffany with a FAPE. (Ludwick Decl. ¶¶ 5-6.)

In addition to failing to place Tiffany in an appropriate school, plaintiffs claim that DCPS further violated the IDEA by failing to abide by the statutory deadlines. (Pls.' Reply 1-6.) When the Masseys filed their request for a due process hearing on October 11, 2005, the school district was required to respond within ten days. § 1415(c)(2)(B). Plaintiffs claim that DCPS made no reply. (October 27 Hearing.) The next deadline was to hold a resolution conference within 15 days of the filing. § 1415(f)(1)(B). Again, plaintiffs allege, DCPS made no attempt to schedule the conference until this legal action was well underway, nine days after the statutory deadline. (Pls.' Reply 6.)

DCPS argues that it did, in fact, meet the first deadline to respond to the due process hearing. It issued the Prior Notice placing Tiffany at MM Washington Center on October 14, and transmitted it to plaintiffs on October 17, 2005, six days after their request for the due process hearing. (Addendum Defs.' Resp. 2.) The October 14 Prior Notice, DCPS contends, satisfies the IDEA's requirement that DCPS respond. (*Id.*) As to the next deadline, DCPS asserts that the only reason it failed to hold the resolution conference is because the Masseys did not return its telephone calls. (*Id.* at 3; Scales-Johnson Decl. *passim.*) In an effort to schedule a mutually convenient time for the meeting, the DCPS Resolution Session Scheduling Coordinator allegedly called Mr. Massey on four separate occasions within the ten days following receipt of the due process hearing request. (Scales-Johnson Decl. ¶ 3.) There was no answer, and she received no response to her messages. (*Id.*) Finally, on October 25, 2005, she scheduled the hearing for November 4, 2005 and notified the Masseys thereof. (*Id.* ¶ 4.)

On the basis of the foregoing, plaintiffs conclude that DCPS has acted in bad faith.

5

Plaintiffs argue that they should not be required to continue through DCPS' administrative process, which has been revealed as inadequate. Therefore, plaintiffs request that this Court issue a preliminary injunction requiring DCPS to place Tiffany at Leary School.

DCPS counters that it is the Masseys who have impeded the administrative process, and that DCPS, for its part, has satisfied its obligations under the IDEA; thus, it contends, there is no basis for a finding that its administrative resolution procedures are inadequate. The Masseys, DCPS argues, must give the administrative process a chance to work before asking this Court to inject itself into the dispute.

## II. DISCUSSION

*A. Subject Matter Jurisdiction*

   *1. Legal Standard*

Before parents may challenge a school district's action under the IDEA, they must first exhaust their administrative remedies available under the statute. § 1415(*l*). A court has no subject matter jurisdiction over an IDEA claim that has not first been pursued through administrative channels. Exhaustion is not required, however, when it is demonstrated that continuing through the administrative process would be futile or inadequate. *Honig v. Doe*, 484 U.S. 305, 327 (1988) (noting that "parents may bypass the administrative process where exhaustion would be futile or inadequate"); *cf. Cox v. Jenkins*, 878 F.2d 414, 419 (D.C. Cir. 1989) (dismissing parents' action because they had neither "pursue[d] all administrative avenues of redress" nor "show[n] that exhaustion would be futile or inadequate"). In such circumstances, the rationale of the exhaustion requirement – to prevent "premature interruption of the administrative process" – is not served by requiring exhaustion. *Randolph-Sheppard Vendors of*

6

*Am. v. Weinberger*, 795 F.2d 90, 104 (D.C. Cir. 1986).

In this Circuit, the "futile or inadequate" standard is difficult to meet. *Id.* at 106 ("The rule is that the exhaustion requirement may be waived in only the most exceptional circumstances.") (citations omitted). Plaintiffs argue that the administrative process would be inadequate because DCPS already failed to meet three of its obligations under the IDEA. First, DCPS has failed to provide Tiffany with an appropriate placement. Second, DCPS failed to hold the resolution session in a timely manner. Third, DCPS failed to respond to the hearing request in the substance required by the statute. DCPS' failures on these three points, plaintiffs contend, illustrate that it is unable to provide an adequate administrative process. As such, it would be pointless to continue pursuing an administrative remedy before seeking redress in this Court.

*2. DCPS' Failure to Place Tiffany*

DCPS left Tiffany without any placement for several weeks after her discharge from Riverside Hospital and termination from Riverside Academy. DCPS offers no explanation for why, when it was on notice that she would require a new placement, it failed even to begin the process of finding an appropriate placement until two weeks after her discharge (more than a month after DCPS had been notified). At that point, when DCPS held Tiffany's IEP meeting, it promised that a proposed placement would be forthcoming within five days. DCPS also indicated at that meeting that it would consider Leary School, the parents' preferred placement. DCPS failed to contact the parents about Leary School, or *any* placement, for Tiffany within the promised time frame. The Masseys contacted DCPS three days after the deadline passed, reiterating their request, and again DCPS failed to respond. In fact, DCPS took no action – and did not even communicate that it was considering Tiffany's case at all – until after plaintiffs filed

their request for a due process hearing and indicated that they were considering litigation.

Finally, threatened with legal action, DCPS quickly made the two proposed placements. It did not explain how either placement was appropriate for Tiffany, given her IEP, nor did it explain why it declined to place Tiffany at Leary School. Without response from the Masseys, DCPS placed Tiffany at one of the schools it had proposed, MM Washington Center. One week later, at the hearing on the temporary restraining order, DCPS was unable to explain how either proposed placement was appropriate for Tiffany. Another week passed before the second hearing, but DCPS counsel was still unable to defend the appropriateness of the placement. This failure to provide the parents with any information as to why DCPS' placement is safe and appropriate for their daughter was made worse by DCPS' acknowledgment that it carries the burden to show that a placement is appropriate. This is simply one example of what was revealed to be a pattern by DCPS of paying lip service to its responsibilities under the IDEA and related local laws while making no apparent effort to actually comply with them.

*3. DCPS' Failure to Hold Resolution Conference*

DCPS' next failure was close behind. Once the Masseys initiated a complaint with DCPS, it was obligated to follow the statutory deadlines in the IDEA. Doing so might have provided the Masseys and this Court with some reassurance that pursuing administrative remedies would not be futile or inadequate. DCPS claims that it failed to schedule the resolution session in a timely manner because it could not reach the Masseys by telephone. (Addendum Defs.' Resp. 3; Scales-Johnson Decl. ¶ 3.) Ms. Scales-Johnson of DCPS states that she attempted to reach the Masseys by telephone on four separate occasions, leaving voicemail messages each time. The Masseys never returned her call, and she eventually scheduled the

session without their input.  (Scales-Johnson Decl. ¶ 4.)

The Masseys concede that they did receive one message (Massey 10/30/05 Aff. ¶ 11) and further acknowledge that they do not frequently check to see if they have any messages (*Id.* ¶ 12). For purposes of compliance with the IDEA's requirement to hold a resolution session within 15 days of receipt of a due process hearing request, this Court finds that it is immaterial how many times DCPS called the Masseys.  It was appropriate for DCPS to attempt to consult with the Masseys in order to schedule the conference, but it should not have used their lack of response as an excuse for allowing the statutory deadline to pass unheeded.  The statute obligates DCPS to hold a session within 15 days, period.  It does not make allowances for difficulties in communicating.  Particularly since DCPS knew the Masseys were represented by counsel, there is no excuse for their failing to call counsel or to simply schedule the conference within the statutory time frame and advise counsel or the parents thereof.

   *4.  DCPS' Failure to Respond in Writing*

Finally, the inadequacy of DCPS' administrative remedy is illustrated by its blatant disregard for the statutory requirement of a written response to the Masseys' request for a due process hearing.  Under the statute, if DCPS had not previously issued a Prior Notice for Tiffany, it was required to respond in writing to the request for a due process hearing.  § 1415(c)(2)(B)(i)(I).  Furthermore, DCPS may not determine the form of its response: the required content of the written response is precisely detailed in the IDEA.  § 1415(c)(2)(B)(i)(I)(aa)-(dd).  Since DCPS had not issued a Prior Notice for Tiffany at the time of receiving the due process hearing request, it was obligated to respond in writing within ten days.

The specific requirements for the written response include: (1) an explanation of why the

agency proposed or refused to take the action raised in the complaint; (2) a description of other options that the IEP Team considered and the reasons why those options were rejected; (3) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and (4) a description of the factors that are relevant to the agency's proposal or refusal. § 1415(c)(2)(B)(i)(I)(aa)-(dd). DCPS claims that the Prior Notice issued on October 14 and transmitted it to the Masseys three days later, on October 17, 2005, satisfies the requirement for a written response. The October 14 Prior Notice, however, contains not one of the four factors required. It is a form with blanks and boxes to be completed as appropriate. Nowhere on the form does DCPS explain why it refused to place Tiffany at Leary School, whether it even considered Leary School and other placements before making the placement at MM Washington Center, what its basis was for placing her at MM Washington Center, or what other factors might be relevant to DCPS' action. Since the Masseys have independently identified several serious problems with MM Washington Center (Massey 10/30/05 Aff.; Walters Aff.; Mendelsohn Aff.), it is imperative that they understand what factors led DCPS to determine that the placement is appropriate.

When asked about the deficiencies of the October 14 Prior Notice as a written response to the due process hearing complaint, DCPS' explanation is somewhat unclear. It appears to claim that the October 14 Prior Notice satisfied the requirement to respond. (Addendum Defs.' Resp. 2.) Such a claim is difficult even to entertain: the statute unambiguously details several factors that must be contained in a response to the request for a due process hearing, and the October 14 Prior Notice does not even purport to conform to those requirements. DCPS might have intended that the October 14 Prior Notice satisfies the statute because, if it had been sent prior to

10

receipt of the hearing request, no new written response to the hearing request would have been necessary.  Since the October 14 Prior Notice was, in fact, sent after receipt of the hearing request, it is difficult to see the merit in this argument.

DCPS also argues that it is only required under the IDEA to issue a written notice responding to the substance of the complaint.  (Addendum Defs.' Resp. 2.)  Since the complaint was the failure to place Tiffany, DCPS argues, a notice placing her at MM Washington Center conforms with the statutory requirement.  (*Id.*)  But, as described above, the IDEA does not allow DCPS to respond generally to the substance of the complaint in whatever form it deems appropriate.  On the contrary, Congress' delineation of the four requirements makes clear that general responses are not acceptable.  DCPS also implied at the October 18 Hearing that any failure to conform to the statute was a mere technical oversight.  It is technical compliance with the law, however, that gives parents faith that their concerns will be addressed in accordance with Congress' intent.  Many of the procedural safeguards in the IDEA are extremely technical, spelling out particular deadlines and required content.  This kind of detail embodies the purpose of a statute prescribing administrative – *i.e.,* procedural – remedies.  *See Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 78 (D.D.C. 2003) (Friedman, J.) (noting that "the procedural due process protections included by Congress in the IDEA are of critical importance to effectuating the goals of the statute") (citing *Bd. of Ed. of the Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176 (1982)).  Does DCPS mean to imply that it is permitted to violate the IDEA as long as the ways in which it does so are minor?  This Court has not been directed to any evidence that Congress intended an exemption for "close enough."

*5. DCPS' Administrative Process is Inadequate*

Because of DCPS' repeated failures to follow unambiguous terms of the law and to acknowledge and correct its mistakes, this Court cannot find that DCPS' process for administrative relief would be adequate. DCPS has provided this Court no basis on which to infer it is taking seriously the Masseys' claims, nor to trust that it will be able to follow the IDEA in addressing those claims. Tiffany was idle at home, awaiting an appropriate placement, for more than five weeks before DCPS issued a placement. Since then, she has remained out of school because her parents are legitimately concerned, based on firsthand experience and expert advice, that MM Washington Center is not appropriate for her.[3] They have received no assurance from DCPS that the placement was based on Tiffany's IEP. Leaving Tiffany without schooling until the administrative process has been exhausted will certainly mean that she will remain with no appropriate school placement for the remainder of this calendar year, as the due process hearing is not scheduled to occur until December. Without any assurance that DCPS will observe the statute as it proceeds through administrative review, this Court is not confident that the Masseys will be afforded a meaningful remedy.

While this Court acknowledges the general preference for requiring exhaustion, this Court cannot be so constrained when DCPS fails to even discuss with the Masseys the factors influencing its decisions. *See Petties v. District of Columbia*, 238 F. Supp. 2d 88, 99 (D.D.C. 2002) (Friedman, J.) (citing *Honig*, 484 U.S. at 311-12) (noting the Supreme Court's conclusion that "the clear intent of Congress was to make parental involvement the cornerstone of the

---

[3] *See supra* note 2 describing Ms. Mendelsohn's recent observations that MM Washington Center is chaotic and fraught with unstructured and disrespectful student conduct.

placement process under the IDEA"). Surely Congress did not intend for parents to be left with no remedy when the school district fails to observe the procedural safeguards in the IDEA. *Cf., e.g., Spiegler v. District of Columbia*, 866 F.2d 461, 467 (D.C. Cir. 1989) (quoting the principal sponsor of the IDEA for the importance of avoiding delay in the resolution of matters under the IDEA). In this Court's opinion, the litany of DCPS failures reveals that it is apparently unable to follow statutory procedures in the first place. Worse yet, DCPS appears to be incompetent to address, in the manner required by the IDEA, a parent's complaints about those failures. Therefore, this Court finds that plaintiffs have demonstrated that pursuing their claim through the administrative process would be inadequate, and the Masseys are not required to exhaust their administrative remedies. Accordingly, this Court finds that it properly exercises subject matter jurisdiction over the Masseys' complaint.

B. *Preliminary Injunction*

A request for a preliminary injunction requires consideration of four factors: (1) the likelihood that plaintiff will prevail on the merits of their claims; (2) the irreparable harm plaintiffs will suffer absent the injunction; (3) the harm defendants or other interested parties will suffer under the injunction; and (4) the public interest in granting or refusing to grant the injunction. *See, e.g., Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998) (citing *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)). Under this test, no single factor is dispositive; rather, all four "interrelate on a sliding scale and must be balanced against each other." *Serono Labs.*, 158 F.3d at 1318 (citations omitted). As a result, a strong showing of irreparable harm may overcome a weaker finding of success on the merits, or vice versa. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d

738, 747 (D.C. Cir. 1995).

*1. Likelihood of Success on the Merits*

The Masseys have demonstrated a strong probability that they will succeed on the merits of their claim that DCPS violated the IDEA. As discussed in detail *supra* Section II.A, DCPS has likely already violated several sections of the IDEA. It failed to issue a timely placement for Tiffany, it failed to respond appropriately to the Masseys' request for a due process hearing, and it failed to timely hold the resolution session. This Court has previously found that a violation of the procedural requirements of the IDEA "can itself constitute the denial of a free appropriate education." *Blackman*, 277 F. Supp. 2d at 79. More specifically, "the failure to provide a written determination in a timely manner after requests for an IEP meeting or a hearing have been made constitutes the denial of a free appropriate public education as required by the IDEA." *Id.* at 79 (citing *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 31-32 (D.D.C. 2001) (Friedman, J.)). Accordingly, there is a strong likelihood that the Masseys will prevail on their claim that Tiffany has been denied the FAPE to which she is entitled.

*2. Irreparable Injury*

In prior cases, this Court has recognized that a failure to provide a FAPE constitutes irreparable injury. *E.g., Blackman*, 277 F. Supp. 2d at 79 ("[E]ach day a child is denied a free appropriate education by such procedural dereliction of a school system he or she is harmed yet again."); *Cox v. Brown*, 498 F. Supp. 823, 829 (D.D.C. 1980) (Green, J.) (finding the irreparable harm requirement satisfied by the failure to provide an appropriate education). The likely harm is greater here, given Tiffany's history of self-destructive behaviors and her recent discharge from a highly structured environment. A child without disabilities would suffer harm from being

unable to attend school; such harm is heightened for a disabled child with much greater need for daily structure and consistency. Since there is no assurance that DCPS is able to follow the procedural timelines required in the IDEA, there is no telling how long Tiffany will remain without a FAPE. Therefore, this Court finds that Tiffany will suffer irreparable harm if the injunction is not granted.

    *3. Balance of Harms*

As to the balance of harms, DCPS claims that the unanticipated financial expense of funding Tiffany's tuition at Leary School would adversely affect its ability to meet budget projections and to comply with a local law forbidding the expenditure of funds that are not presently available. (Defs.' Resp. 12-13.) This hardship is alleged to be substantially greater than the harm Tiffany will suffer if the injunction is denied. This Court is unpersuaded that harm to DCPS resulting from entry of the injunction outweighs the harm Tiffany would face if it were denied. The failure to provide an appropriate education is a serious harm recognized in prior decisions. *E.g., Blackman*, 277 F. Supp. 2d at 79; *Cox v. Brown*, 498 F. Supp. at 829. While this Court is sensitive to the budgetary pressures facing any public school district, DCPS cannot be allowed to violate the IDEA and then plead immunity to sanctions because of its financial situation. It is well within DCPS' control to comply with the IDEA and obviate the need for courts to make determinations that will affect DCPS' budget. DCPS remains free to petition this Court to lift the preliminary injunction upon conclusion of the administrative process if it believes that it has complied with the IDEA and provided Tiffany with a FAPE. Where DCPS cannot ensure parents an adequate process, however, it cannot be exempted from compliance because of financial concerns. Therefore, this Court does not find that the balance of harms tips

in DCPS' favor.

    *4. Public Interest*

Finally, granting the preliminary injunction would be in the public interest. Prior decisions by this Court have made clear that the relevant public interest is that of the students. "The public interest lies in the proper enforcement of . . . the IDEA and in securing the due process rights of special education students and their parents provided by statute." *Petties*, 238 F. Supp. 2d at 99. Furthermore, that public interest "outweigh[s] any asserted financial harm to DCPS." *Id.* This Court finds that the public interest would be served by Tiffany being granted a proper placement.

It bears repeating that this Court is cognizant of the burden that granting the preliminary injunction places on DCPS. Upon careful consideration of the record in this case, however, this Court finds that DCPS has given it no other choice. DCPS cannot be allowed to disregard the procedural requirements, thereby failing to provide children with FAPEs, all the while giving no assurance that it is capable of recognizing and remedying errors made during its placement process. Condoning DCPS' conduct in this case would eviscerate the IDEA's purpose of giving parents a greater role in the educational decisions impacting their children. Therefore, this Court finds that plaintiffs' motion for a preliminary injunction shall be granted.

### III.  CONCLUSION

Based on the foregoing, plaintiffs' motion for a preliminary injunction shall be GRANTED.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, November 3, 2005.