UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WARNER MASSEY, *et al.*, <br>     Plaintiffs, <br><br>     v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br>     Defendants. | ) <br> ) <br> ) <br> )    Case No. 1:05-cv-2033 (RCL) <br> ) <br> ) <br> ) |

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

**I.   INTRODUCTION**

In their Motion to Dismiss, Defendants argue that Plaintiffs' claim under the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C.A. § 1400 *et seq*, is moot because DCPS has finally issued notice of a school placement. Because this "notice" is violative of the law, it does not render moot Plaintiffs' claim under the IDEIA.

Defendants further argue that Plaintiffs' claim under the American with Disabilities Act ("ADA"), 42 U.S.C.S. §§ 12131 and 12132, should be dismissed for failure to state a claim. As explained herein, because Defendants have cited no binding authority for their proposition – and, alternatively, because Defendants have violated the ADA in bad faith and by gross misjudgement – Defendants' argument fails.

Finally, Defendants argue that the Court lacks jurisdiction over this matter because Plaintiffs have yet to exhaust their administrative remedies. As explained herein, the instant case is well within the Court's jurisdiction because exhaustion is not required. Indeed, the Court has already recognized as much in its November 3, 2005 Memorandum Opinion granting

1

Plaintiffs' Motion for Preliminary Injunction ("Opinion").

## II.   ARGUMENT

### A.   Plaintiffs' Claim I under the IDEIA is not moot because Defendants continue to violate IDEIA procedural safeguards and deny T.M. a free appropriate public education (FAPE).

In their Motion to Dismiss, Defendants argue that the "notice" faxed to Plaintiffs' counsel on October 17, 2005 ("October 17 notice") concerning MM Washington Center satisfies Defendants' statutory obligation under 20 U.S.C.A. § 1415(b)(3)(B), thereby mooting Plaintiffs' Claim I.  (Motion to Dismiss 8.)  Inexplicably, Defendants read Plaintiffs' Claim I very narrowly to be merely a claim regarding Defendants' failure to respond to Plaintiffs' two written requests to place T.M. at Leary School.  (*Id.* 7-8.)  This narrow reading is inaccurate.  Plaintiffs' Claim I rests squarely on Defendants' failure to provide T.M. with a free appropriate public education (FAPE), of which the failure to respond to the requests for placement at Leary School is but one component.  (*See* Complaint ¶ 7) ("...DCPS has failed to either propose a new school placement for [T.M.] or place [T.M.] in any school, thereby denying her a free appropriate public education (FAPE) in violation of the IDEIA").  Assuming *arguendo* that Defendants' understanding of Claim I were accurate, Defendants' argument still fails because Defendants still have not, in accordance with the IDEIA, responded to Plaintiffs' two written requests to place T.M. at Leary School.

### 1.   The October 17 notice can not satisfy DCPS's obligation under 20 U.S.C.A. ¶ 1415(b)(3)(B) to respond to Plaintiffs' written requests for placement at Leary School because the October 17 notice makes no mention whatsoever of Leary School.

Section 1415(b)(3)(B) of the IDEIA obligates DCPS to "provide prior written notice to

the parents of the child, *in accordance with subsection (c)(1)*, whenever the local education agency... refuses to initiate or change... the educational placement of the child..." (emphasis added).  The components of § 1415(b)(3)(B) prior written notice are clearly enumerated in subsection (c)(1).  Not surprisingly, subsection (c)(1) requires DCPS, *inter alia*, to address the action being refused (*i.e.,* placement of T.M. at Leary School), explain why it is being refused, and describe the factors relevant to that decision.  The October 17 notice simply makes no mention of Leary School whatsoever.  In their Motion to Dismiss, Defendants do not endeavor to argue that the October 17 notice addresses and satisfies the elements of § 1415(c)(1); rather, they ignore these elements and merely assert that the October 17 notice satisfies their obligation under § 1415(b)(3).  Because of the obvious deficiency noted here, it clearly can not.

      **2.**    **The October 17 notice is violative of the IDEIA and contains material misrepresentations.**

Regardless of Defendants' understanding of Claim I, reliance on the October 17 notice as proof of compliance with *any* of Defendants' many obligations under the law is misplaced because the October 17 notice is violative of the IDEIA and contains material misrepresentations.  The October 17 notice purports to change T.M.'s educational placement to MM Washington Center.  As a notice of change in placement, the October 17 notice must include the requirements enumerated at § 1415(c)(1).  Defendants' failure to include these requirements is not a mere procedural oversight.  Rather, it is an issue related to one of the IDEIA's key requirements: "that parents, teachers, educational experts and students together determine the appropriateness of each IEP and placement." *Lemon v. District of Columbia*, 920 F. Supp. 8, 12 (D.D.C. 1996); 20 U.S.C.A. § 1414(e) (DCPS "shall ensure that the parents of

each child with a disability are members of any group that makes decisions on the educational placement of their child").

First, the October 17 notice misrepresents that T.M.'s mother was "an invited member" of the multidisciplinary team (MDT) which made the following three decisions about T.M.: (1) "Your child is eligible or continues to be eligible to receive special education services as a student with Emotoal [sic] Disturbances." (2) "Your child will begin receiving Specialized Instruction and Counseling as a related service(s)." (3) "Your child's alternative placement on continuum (next setting) is being changed, from RiversideAcademy [sic] to MM Washngton [sic] Center." T.M.'s parents were never invited members of any team that made any of these decisions.[1] The only team of which T.M.'s parents were invited members, and in which they participated, was the September 21, 2005 IEP team. That team made none of the conclusions asserted in the October 17 notice. Rather, that team concluded the following: (1) T.M. is Emotionally Disturbed *and* Learning Disabled; (2) T.M. will receive Special Education Instruction, Counseling, *and* Psychological Services in the form of Art Therapy; and (3) DCPS would propose an educational placement by September 26, 2005. MM Washington was not even identified as a possible placement option at the meeting.

Incredibly, Defendants themselves acknowledge that this assertion of MDT involvement is an outright misrepresentation. The affidavit of Ms. Lori Ludwick, Exhibit 1 to Defendants' Addendum to Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, makes

---

[1] The October 17 notice lists the following as the "MDT Members": Principal or Designee, Parent, Student, Special Education Teacher, "LEA & Interpreter," and "Ed. Advocate." Not only did T.M.'s parents not participate in an MDT that reached these conclusions, neither did T.M. nor the below-signed "Ed. Advocates."

clear that the decision to issue the October 17 notice for MM Washington Center was made unilaterally by Ms. Ludwick.

Second, the October 17 notice lists T.M.'s "Current Disability Category" as "Emoinally Disturbed" [sic]. T.M.'s current IEP lists her as both Emotionally Disturbed *and* Learning Disabled. The September 21, 2005 IEP team unanimously agreed to add the classification of Learning Disabled when it was observed that T.M.'s past IEPs had included a Learning Disabled classification and that, according to an August 5, 2004 psychoeducational evaluation, she continued to be so classified. The October 17 notice fails to accurately consider this most fundamental component of the IEP.

Third, the October 17 notice fails to describe "each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action," as required under § 1415(c)(1)(B). Although the October 17 notice appears on a preprinted form that includes a two-page list, with accompanying boxes to check, entitled "evaluation procedures, test, records or reports used," none of the boxes are checked.

Fourth, the October 17 notice fails to describe "other options considered" and "the reasons why those options were rejected," as required under § 1415(c)(1)(E). Although the October 17 notice appears on a preprinted form that includes a space to so describe other options, that space is blank. As explained *supra*, the October 17 notice makes no mention of Leary School, nor does it mention at all the "other option" Defendants claim to have been considering, DCALA Senior Center.

Fifth, the October 17 notice fails to describe "the factors that are relevant to the agency's proposal or refusal," as required under § 1415(c)(1)(F). Again, that space on the October 17

5

notice is blank.

According to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Opposition"), the offer of MM Washington "was determined by DCPS, based on [the September 21, 2005] IEP and applying DCPS' educational expertise." (Opposition 7.) DCPS's "educational expertise" notwithstanding, the October 17 notice contains fatal misrepresentations and omissions of material facts: it disregards T.M.'s disability category; it misrepresents that an entire team – including the student and her parents – reached decisions on key issues, including placement; and it fails to include the statutorily mandated components of prior written notice.

For the foregoing reasons, the October 17 notice should not be considered to satisfy *any* of Defendants' obligations under the IDEIA.

B.   **Plaintiffs have stated a claim under the Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12131 and 12132.**

In their Motion to Dismiss, Defendants argue that "[p]recedent is uniform, however, that the ADA does not grant any rights beyond those granted by IDEA, and that more than just a denial of FAPE must be shown." (Motion to Dismiss 9.) They argue that a special education claim brought under the ADA must include a showing of "bad faith or an exercise of gross misjudgment." *Thompson v. Bd. of Special School Dist. No. 1*, 144 F.3d 574, 580 (8th Cir. 1998). This precedent, however, is not as "uniform" as suggested – Defendants have cited no binding authority whatsoever from this jurisdiction in support of that proposition.

In arguing for a Rule 12(b)(6) dismissal of Plaintiffs' Claim II, Defendants seem to suggest either that Plaintiffs were required to plead all of the facts supporting their claim (*i.e.*,

6

facts as required under other jurisdictions' law), or that Plaintiffs carried a heightened pleading requirement for their claim under the ADA. Neither proposition is true.

### 1. Plaintiffs have adequately plead their claims under the Federal Rules.

Dismissal under Fed. R. Civ. P. 12(b)(6) is inappropriate here because Plaintiffs have adequately pled their claims under Fed. R. Civ. P. 8(a). The Supreme Court has been clear that, under the modern "notice pleading" system, a plaintiff need not set forth in detail all of the facts supporting a claim.

> The respondents also argue that the complaint failed to set forth specific facts to support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" [citing Fed. R. Civ. P. 8(a)(2)] that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. [Citing other Federal Rules.] Following the simple guide of Rule 8(f) that "all pleadings shall be so construed as to do substantial justice," we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson*, 355 U.S. 41, 48 (1957). Plaintiffs' Complaint in the instant case alleges that Defendants have failed to propose a placement for T.M., failed to respond in writing to Plaintiffs' requests for placement, and failed to provide T.M. with FAPE (Complaint ¶¶ 7, 10), thereby giving Defendants adequate notice of the claims being made. Plaintiffs are not required "to set forth specific facts to support its general allegations." *Conley*, 355 U.S. at 48. Thus, even if Plaintiffs were required to prove "bad faith or gross misjudgment" under the law of this

jurisdiction, they are not required to plead each fact supporting those elements.

Furthermore, the IDEIA itself speaks to the bringing of special education claims under the ADA:

> Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, *the Americans with Disabilities Act of 1990*, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part.

20 U.S.C.A. § 1415(l) (emphasis added).[2] "Congress added this section to the IDEA in order to overturn the Supreme Court's decision in *Smith v. Robinson*, 468 U.S. 922 (1984), in which the Court held that the IDEA precluded claims under the Rehabilitation Act and the Equal Protection Clause [and also the ADA[3]]." *Walker v. District of Columbia*, 969 F. Supp 794, 796 (D.D.C. 1997).

### 2. There is no heightened pleading requirement for special education claims.

In their Motion to Dismiss, Defendants seem to suggest that Plaintiffs must meet a heightened pleading standard, one that includes allegations of "bad faith" or "gross misjudgment." Defendants have cited no authority in support of this proposition. Furthermore, Fed. R. Civ. P. 9(b) is clear as to which types of claims must be plead with particularity; special

---

[2] The exhaustion described by this subsection is, for the same reasons explained in the following section of this Memorandum, not required.

[3] Originally found at § 1415(f), the 2004 amendments to the IDEA added the ADA to this section and recodified it at § 1415(l).

education claims are not covered by the Rule. Thus, there is no heightened pleading requirement which Plaintiffs were required to meet.

> **3.  Alternatively, even if Plaintiffs were required to plead all underlying facts or meet a heightened pleading requirement, Defendants could amend their Complaint to detail Defendants' bad faith and gross misjudgment.**

The precedent of other jurisdictions upon which Defendants rely states that a special education claim brought under the ADA must include a showing of "bad faith or an exercise of gross misjudgment." *Thompson*, 144 F.3d at 580. Based on the conduct described both in the foregoing sections and in Plaintiffs' Reply Memorandum to Defendants' Addendum to Opposition to Plaintiffs' Motion for Preliminary Injunction ("Reply to Addendum"), Defendants have engaged in bad faith and exercised gross misjudgment in violating T.M.'s rights under the ADA. This conduct includes: (1) generally, disregard of Defendants' obligation to provide T.M. with FAPE; (2) failure to issue legally sufficient prior written notice in proposing MM Washington by, *inter alia*, failing to consider T.M.'s most current IEP and misrepresenting the fact of multidisciplinary team involvement; (3) continual reliance on the October 17 notice despite Plaintiffs' counsel having explained its many deficiencies to Defendants; (4) failure to issue prior written notice in refusing to place T.M. at Leary School; (5) failure to respond regarding placement at Leary School by September 26, 2005, as promised by DCPS's representative at the September 21, 2005 IEP meeting; (6) requesting a medical records waiver at the September 21, 2005 IEP meeting (over one month after the August 15, 2005 notice of T.M.'s discharge) and identifying the waiver (or lack thereof) as the reason for DCPS's failure to identify an educational placement for T.M.; (7) refusing placement at Leary School based solely

9

on financial concerns and with no consideration of the school's educational appropriateness for T.M.; (8) offering placement at a school that is clearly age-inappropriate for T.M.; (9) failing to respond in writing to Plaintiffs' due process hearing request; (10) failing to timely convene a resolution conference to attempt to resolve the issues raised in Plaintiffs' due process hearing request; and (11) misrepresenting the efforts made to schedule the resolution conference, including claiming to have sent written notice thereof on October 25, 2005, when the postmark on the notice's envelope reads October 28, 2005.

Considered individually, some of these failures may, if properly explained, be understandable, if not excusable. However, considered in the aggregate, these failures evidence bad faith and gross misjudgment on behalf of Defendants in the exercise of their statutory obligations under the ADA to ensure that T.M. *not*, "by reason of [her] disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity," 42 U.S.C.S. § 12132, *i.e.*, the provision of a free appropriate public education.

Were the Court to adopt the law as presented by Defendants, Plaintiffs respectfully reserve the right under Fed. R. Civ. P. 15(a) to amend their Complaint to include allegations of the foregoing conduct.

### C. The Court has jurisdiction over this matter because exhaustion of administrative remedies is not required.

In their Motion to Dismiss, Defendants argue that this Court has no subject matter jurisdiction because Plaintiffs have not exhausted their administrative remedies. However, in its November 3, 2005 Opinion, this Court recognized that exhaustion of administrative remedies in

this case is not required.

The Supreme Court has been clear that the requirement of exhaustion of administrative remedies in cases arising under the IDEIA is not absolute. "It is true that judicial review is normally not available under § 1415(e)(2)[4] until all administrative proceedings are completed, but as we have previously noted, parents may bypass the administrative process where exhaustion would be *futile or inadequate*." *Honig v. Doe*, 484 U.S. 305, 326-27 (1988) (citing *Smith v. Robinson*, 468 U.S. 922, 1014, n.17 (1984); 121 Cong. Rec. 37416 (1975) (remarks of Sen. Williams) ("[E]xhaustion ... should not be required ... in cases where such exhaustion would be futile either as a legal or practical matter") (emphasis added). *Cox v. Jenkins*, 878 F.2d 414, 418-19 (D.C. Cir. 1989) ("The controlling point of law here is that, absent a showing that exhaustion would be futile or inadequate, a party must pursue all administrative avenues of redress under the [IDEIA] before seeking judicial review...") (citing *Honig v. Doe*); *Bridgeforth v. District of Columbia*, 933 F. Supp. 7, 9 (D.D.C. 1996) ("Parents may, however, bypass the administrative process if they can show that exhaustion would be futile or inadequate") (citing *Honig v. Doe*); *Moss v. Smith*, 794 F. Supp. 11, 13 (D.D.C. 1992) ("plaintiffs may bring this suit [for injunctive relief under the IDEIA] only upon a showing that exhaustion of the administrative remedies would be futile or inadequate") (citing *Cox v. Jenkins*).

Another exception to the exhaustion requirement "is where irreparable injury would

---

[4] Although the language of § 1415(e)(2), as codified in the Education of All Handicapped Children Act of 1975, Pub. L. No. 94-142, 89 Stat. 789, remains unchanged today, it has been split into two different sections in the current IDEIA: section 1415(i)(2)(A) (the right to bring a civil action) and § 1415(i)(2)(C) (the court's power to "grant such relief as the court determines is appropriate").

result unless immediate judicial review is permitted." *Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986) (citing, *inter alia*, *Utah Fuel Co. v. National Bituminous Coal Commission*, 306 U.S. 56, 59-60 (1939)). *Cox v. Brown*, 498 F. Supp. 823, 829 (D.D.C. 1980) ("A well recognized exception to the exhaustion requirement, in an instance where irreparable harm may accrue, satisfies the failure to pursue administrative remedies") (citing *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)); *Walters v. Secretary of Defense*, 533 F. Supp. 1068, 1071 (D.D.C. 1982) (exhaustion not required "where irreparable injury would result unless judicial review is permitted") (rev'd on other grounds, *Walters v. Secretary of Defense*, 725 F.2d 107, (D.C. Cir. 1983)).

          **1.**      **Exhausting administrative remedies would be inadequate.**

In its Opinion of November 3, 2005, this Court concluded that "[b]ecause of DCPS' repeated failures to follow unambiguous terms of the law and to acknowledge and correct its mistakes, this Court cannot find that DCPS' process for administrative relief would be adequate." (Opinion 12.) The "repeated failures" include all of those enumerated above in section B.1. (*e.g.*, failure to issue prior written notice of change in placement, failure to respond in writing to requests for placement at Leary School, failure to timely convene a resolution meeting, and failure to respond in writing to the due process complaint). For those reasons, the Court has already concluded that exhaustion is not required and that the Court has subject matter jurisdiction over this matter.

## III.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.

>                    Respectfully submitted,
>
>                    ___/s/ Joseph B. Tulman___
>                    Joseph B. Tulman, Esq.
>                    Bar No. 297671
>
>                    ___/s/ Benjamin Kull___
>                    Benjamin Kull
>                    Law Student Advocate
>
>                    University of the District of Columbia
>                    David A. Clarke School of Law
>                    Juvenile and Special Education Law Clinic
>                    4200 Connecticut Avenue, Bldg. 39, 2nd Floor
>                    Washington, D.C.  20008
>                    (202) 274-7314
>                    fax: (202) 274-5569
>                    *Counsel for Plaintiffs*
>
>                    November 4, 2005